IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| Otha Issaac, | ) | 05 B 13874 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

## MEMORANDUM OPINION

On April 12, 2005, Chapter 13 debtor Otha Issaac filed a Chapter 13 plan intending to cure the arrears on three mortgage loans held by First Bank and secured by three parcels of real property, one of which is the debtor's primary residence, in addition to personal property used by the debtor's corporation. (Mid America Bank, FSB, also holds a mortgage on the parcel that is the debtor's primary residence.)

The three loans and the collateral securing them are structured as follows:

The mortgage of First Bank that is first in priority originally secured a loan in the principal amount of $350,000; it is secured by two of the three parcels of real property; and the entire amount of principal and interest will become due in a single balloon payment on December 1, 2007, before the term of Issaac's plan expires.

The mortgage of First Bank that is second in priority originally secured a loan in the principal amount of $50,000; it is secured by all three parcels of real property (including the two subject to the first mortgage); and it is also secured by personal property used in Issaac's business.

The mortgage of First Bank that is third in priority originally secured a loan in the principal amount of $120,000; it is secured by all three parcels of real property (including the two subject to the first and second mortgages of First Bank).

First Bank objects to confirmation of Issaac's Chapter 13 plan pursuant to 11 U.S.C. § 1324, because it incorrectly lists the arrears, fails to provide for the payment of property taxes and insurance premiums, fails to correctly list the monthly mortgage payment coming due during the term of the plan, and fails to make provision for the balloon payment of $350,000.

To support plan confirmation, Issaac argues that she is willing to correct or has corrected all of the arrearage discrepancies to the satisfaction of First Bank. Further, she contends that because the first-mortgage balloon payment is not currently in arrears, the plan will sufficiently provide for the first mortgage by permitting automatic stay modification if and when she fails to make such balloon payment.

Neither party made any references to applicable Bankruptcy Code provisions at the hearing on the objection to confirmation of the debtor's Chapter 13 plan. As a result, both parties have failed to apply the applicable legal provisions and have referred to irrelevant current-arrearage figures. Although this situation is unusual and somewhat technical, the Code does provide answers to this and many other seemingly difficult bankruptcy questions.

We must start with the general rule for mortgages in Chapter 13 cases:

(b) Subject to subsections (a) and (c) of this section, the plan may--
. . .
(2) modify the rights of holders of secured claims, other than a claim secured <u>only</u> by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
(3) provide for the curing or waiving of any default;
. . .
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending <u>on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due</u>; . . . .

11 U.S.C. § 1322(b). Thus, the general rule is that in Chapter 13 cases, a home mortgage that

secures a long-term obligation cannot be modified, except that the debtor may cure all arrears during the term of the plan and maintain current payments due throughout the course of the plan. In this case, this rule does not apply to any of the three mortgages because they are secured by more than just the debtor's principal residence, and in the case of the second mortgage, it is secured by personal property. *See Lomas Mortg. v. Louis*, 82 F.3d 1 (1st Cir. 1996); *In re Pedigo*, 283 B.R. 493 (Bankr. E.D. Tenn. 2002); *In re Morphis*, 30 B.R. 589, 594 (Bankr. N.D. Ala. 1983). Nonetheless, the debtor may choose to use § 1322(b)(5) to cure the arrears on the second and third mortgages throughout the course of the plan and maintain current payments, though she will not be eligible for a discharge of such long-term debt, *see* § 1328(a)(1).

The general antimodification rule does not apply to the first mortgage for an additional reason: the balloon payment provision in the contract causes the debtor's entire obligation to become due before the final payment under the plan is due. Instead, we must look to another provision to provide the applicable rule:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law--
> . . .
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.

11 U.S.C. § 1322(c). This is the rule applicable to the first mortgage in this case because the debtor's primary residence secures a debt that is a short-term obligation. Alternatively, the debtor could have gone straight to § 1325(a)(5) for all three loans because they are not subject to the antimodification rules.[1] According to this rule, the debtor may modify these mortgages by

---

[1] The additional cure options in § 1322(b)(3) and (5), however, apply only to the second and third mortgages.

meeting the following criteria:

> (a) Except as provided in subsection (b), the court shall confirm a plan if--
> . . .
> (5) with respect to each allowed secured claim provided for by the plan--
> (A) the holder of such claim has accepted the plan;
> (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
> (C) the debtor surrenders the property securing such claim to such holder . . . .

11 U.S.C. § 1325(a). At this point in time we are dealing with subsection (B), which requires that debtor Issaac pay the "allowed secured claim" in full throughout the course of her Chapter 13 plan in present-value terms. This in turn requires that the "allowed secured claim" be fixed as follows:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . , and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C.A. § 506(a). This is the bifurcation rule that applies to all secured claims outside the context of a long-term home mortgage obligation – a rule which permits liens to be stripped down to the value of the collateral if and when insufficient equity exists to support the entire debt due the creditor. If we deal only with the first of the three mortgages, it appears likely that equity sufficient to support it will prevent stripping down the lien, or bifurcation; the second and/or third mortgages could potentially be subject to a strip-down or a strip-off[2] if the debtor chooses §

---

[2] *See In re Waters*, 276 B.R. 879 (Bankr. N.D. Ill. 2002) (holding that home mortgage strip-offs are permissible if no equity supports the mortgage claim).

1325(a)(5) over § 1322(b)(5). (The parties must litigate valuation, however, if a dispute on that issue arises.)

In any event, the "allowed secured claim" must be determined with reference to the total "allowed claim of the creditor," *see* § 506(a), which in turn requires reference to § 502 of the Code. Claims are "allowed" "as of the date of the filing of the petition" and may not include interest that is unmatured as of the petition date. 11 U.S.C. § 502(b)(2). Thus, a loan claim is fixed as of the filing date and includes all principal that will ever become due and interest due only on the filing date. If equity supports the entire resulting claim, then such claim must be paid in full throughout the course of the plan. *See* § 1325(a)(5)(B). The value of property distributed in payment thereof must be "value, as of the effective date of the plan," § 1325(a)(5)(B), meaning that interest on the fixed claim must be paid over time to compensate the creditor for the risk of nonpayment during the course of the plan and for the time value of money. The interest rate, however, is not the contract rate of interest listed in the mortgage; it is fixed by the bankruptcy court by adding a risk premium to the prime interest rate (a "formula rate"). *See Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951 (2004); *cf. In re Cook*, 322 B.R. 336, 341-44 (Bankr. N.D. Ohio 2005) (*Till* does not create a binding rule of law because the plurality and concurrence share no common ground in their analysis; only the holding, not the rule set forth by the plurality, is binding). For these reasons, any arguments about and references to the amount of arrears or the contract rate of interest (except as it relates to prepetition interest due) are incorrect and misplaced if the loan is undersecured. If the loan is oversecured, then another provision permits the secured creditor to recover the contract rate of interest postpetition plus other fees and costs:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest

> on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(b)-(c). Thus, with respect to the first mortgage, First Bank may have a right to the same interest rate throughout. Still, references to arrears may be confusing because the debtor has a right to a modified payment schedule for the first mortgage. *See* § 1322(b), § 1325(a)(5).

With respect to a modified payment schedule, one other issue must be kept in mind. Namely, First Bank's right to adequate protection of its property interest, which normally takes the form of periodic postpetition payments tracking the "decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(1). Adequate protection is an issue usually arising in between the filing of the petition and confirmation of a reorganization plan (the present period in this Chapter 13 case). These adequate-protection payments, however, do not necessarily need to match the rate and timing of payments established by the prepetition contract in order to satisfy sections 361, 1322(c)(2), and 1325(a)(5). *Compare* § 1322(b)(5) (for option of maintaining long-term debt, modification permitted only to the extent arrears are cured while postpetition payments maintained under existing schedule).

These principles also apply to the second and/or third mortgages if the debtor chooses § 1325(a)(5) over § 1322(b)(5). In that instance, the debtor could modify the secured claims in accordance with the law. The creditor would have the right to adequate-protection payments and to have the "allowed secured claim" as defined in § 506(a) paid in full throughout the course of the plan. The "allowed secured claim" and "allowed unsecured claim" would have to be fixed as of the petition date. With respect to the second and third mortgages, it is presently unclear

whether the contract rate of postpetition interest under § 506(b) would apply to an oversecured claim or whether postpetition interest as calculated under *Till* would apply to an undersecured claim.

For the forgoing reasons, the debtor's chapter 13 plan must make full provision for the "allowed secured claim" of First Bank (the first mortgage). It is not adequate to provide that the automatic stay will be modified if and when Issaac misses the scheduled balloon payment during the course of her Chapter 13 plan. The debtor "shall" submit a plan that "(1) provide[s] for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan" and "may" submit a plan that "(8) provide[s] for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." 11 U.S.C. § 1322(a)-(b). To confirm a plan, the Court must find, among other things, that "(6) the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6).

Here, the debtor has not provided a correct total figure for First Bank's "allowed secured claim" and has not set forth a method of supplying the funds necessary to pay it in full, including the balloon payment, throughout the course of her Chapter 13 plan. As such, the objection to confirmation must be sustained, and confirmation of the proposed plan is DENIED.

This opinion constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052. A separate order consistent with the opinion will be entered pursuant to Rule 9021.

Date:  August 25, 2005                          ENTERED:

                                                *Jacqueline P. Cox*
                                                _____
                                                Jacqueline P. Cox
                                                United States Bankruptcy Judge