UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| | ) | |
| OTHA ISAAC, | ) | Case No. 05 B 13874 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

## MEMORANDUM OPINION

On August 25, 2005, a Memorandum Opinion was entered herein denying confirmation of Debtor's plan, which provided that as to First Bank's mortgage that the stay would be lifted if and when the debtor misses the scheduled balloon payment which is due during the course of her Chapter 13 plan. The ruling was based on the plan's failure to make full provision for the bank's allowed secured claim.

The debtor filed her third plan of reorganization on September 19, 2005. It indicates that the mortgage with First Bank is secured by the property located at 19001 South Cicero, Country Club Hills, Illinois, and by property located at 5055 West 190th Place, Country Club Hills, Illinois, and has a balloon payment due on December 27, 2007, in the amount of $328,433.40. In this plan the debtor proposes to satisfy the single payment of $328,433.40 in full by way of refinance or sale on or before December 27, 2007. If the balloon payment to First Bank is not satisfied on or before its due date, the stay will automatically modify as to First Bank and allow First Bank to pursue its remedies at law to collect the balance in full. The bank objects to the latest plan.

Debtor relies on Judge Schmetterer's ruling in *In re Inkuk Chang*, 185 B.R. 50 (Bankr. N.D. Ill. 1995), in opposing the objection. Debtor asserts that that ruling allows an extension of time for the debtor to retain the property for a few additional years to **potentially** obtain replacement financing to pay off the mortgage if the debtor's financial conditions change.

Immediately preceding that remark in the *Chang* opinion, Judge Schmetterer indicated, "Although the debtor cannot extend the mortgage term indefinitely, the debtor can pay the mortgage over the life of the Chapter 13 plan, a period which may be as long as 5 years." *In re Inkuk Chang*,

185 B.R. 50, 53 (Bankr. N.D. Ill. 1995). Judge Schmetterer explained that the extension enables debtors to retain their homes to obtain replacement financing at a more favorable economic time, or hope that their economic circumstances change for the better so that they may pay off the mortgage debt.

A review of the court file for the *Chang* matter reveals that the debtors paid $267,725.00 into their plan over 5 years. The monthly payments were $5325, $3840 of which was dedicated to payment of the mortgage. Those debtors paid the balance of the mortgage, including its balloon payment, during the plan, unlike here where the plan does not provide for payment of the balloon amount which becomes due during the course of the plan.

Debtor relies on *In re Reeves*, 221 B.R. 756 (Bankr. C.D. Ill. 1998), where a debtor was allowed to modify a mortgage that became due by balloon payment before the last plan payment was due by proposing payment of the balloon amount at the end of the plan. That court did not discuss plan feasibility in its acceptance of the §506 bifurcation treatment allowing the debtor to pay the allowed secured claim amount, i.e., the value of the collateral. Debtor can not assert *Reeves* in support of an issue not litigated therein.

As the proponent of her plan, Debtor bears the burden of proving that she has met the § 1325 tests for confirmation, *In re Wolff*, 22 B.R. 510 (B.A.P. 9th Cir. 1982). Debtor must prove the feasibility of her plan requiring sale or refinance in December 2007. Her bare assertions that she will sell or refinance do not satisfy the feasibility requirement; she would have to show the likelihood of a sale or refinancing.

In *In re Gavia*, 24 B.R. 216 (Bankr. E.D. Cal. 1982), aff'd, 24 B.R. 573 (B.A.P. 9th Cir. 1982), the Bankruptcy Court considered the issue of whether a Chapter 13 plan, which provided that the debtor's dwelling was to be sold within six months after confirmation, met the feasibility test. In concluding that the debtor's plan failed to satisfy the feasibility requirement of §1325(a)(6), the *Gavia* court stated as follows:

> While it may be contended that the offer by debtors to sell their dwelling within a stated period of time might be considered their best effort and in good faith [since there appears nothing else that he can do], this proffer should be considered in the light of reality. . . . Additionally, there is no certainty that any piece of real property can be sold in the foreseeable future with any degree of certainty in a

> specified period of time for a sum great enough to cover notes and deeds of trust upon the property, taxes, insurance and costs.

*In re Gavia*, 24 B.R. at 218.

Where the consummation of a Chapter 13 plan hinges entirely upon the happening of a speculative, contingent event, scheduled to occur some three to five years from the date of confirmation, such a plan does not meet the feasibility requirement of §1325(a)(6):

> Some courts have concluded that any proposal to pay a secured creditor from the proceeds of a future sale is so fraught with uncertainty as to fail confirmation requirements. *In re Nantz*, 75 B.R. 617, 619 (Bankr.E.D.Mo.1987) (applying "regular income" eligibility requirement of 11 U.S.C. § 109(e)); *In re Gavia*, 24 B.R. 216, 218 (Bankr.E.D.Calif.1982), *aff'd*, 24 B.R. 573 (9th Cir.BAP 1982) (applying feasibility requirement of 11 U.S.C. § 1325(a)(6)). *Cf. In re Ziegler*, 88 B.R. at 67; *In re Reines*, 30 B.R. 555 (Bankr.D.N.J.1983); and *In re Anderson*, 21 B.R. 443 (Bankr.N.D.Ga.1981) (all denying confirmation where debtors proposed to fund plans from proceeds they hoped to realize from pending lawsuits).
>
> Others, properly deferring to the presence of § 1322(b)(8), have not ruled out confirmation of such plans as a matter of law. They have, however, held debtors to fairly exacting standards to ensure the likelihood of a realization for the secured party. These decisions almost universally contemplate the immediate marketing of the subject asset (usually a homestead). *In re Hogue*, 78 B.R. 867, 873 n. 9 (Bankr.S.D.Ohio 1987). Some suggest that there should be trustee or other administrative oversight of the marketing and sale process. *E.g., In re Anderson*, 28 B.R. 628, 629-630 (S.D.Ohio 1982). The approach embodied in this group of decisions is preferable to the outright denial of the remedy in *Nantz* and in the Bankruptcy Court decision in *Gavia*.
>
> For a proposed cure-by-sale to pass muster, the debtor must make certain objective commitments in the plan, and meet any objection to confirmation by shouldering the burden of production of evidence at a hearing. The plan should specify the terms under which the debtor proposes to market the property, including the listing price and the length and commencement date of the listing agreement. It also should incorporate a default remedy to relieve the affected mortgagee(s) from the automatic stay, if the sale does not close by the end of the proposed cure period. If an affected mortgagee objects to confirmation, the debtor must produce evidence as to past marketing efforts, the state of the market for the subject asset, current sale prospects, the existence and maintenance of any "equity cushion" in the property, and all other circumstances that bear on whether the creditor will see its way out of the case financially whole. If the debtor cannot produce anything more than remote speculation as to the terms or date of a sale; if market conditions are eroding the value of the collateral; if the debtor's efforts at a sale are not directed or energetic enough; or if any other factors demonstrate that the creditor will not receive the value

> of its secured rights within a circumscribed, specified, and "reasonable" cure period, the court cannot confirm the plan. *E.g., In re Gavia*, 24 B.R. at 574; *In re Seem*, 92 B.R. 134, 135-136 (Bankr.E.D.Pa.1988); *In re Hogue*, 78 B.R. at 872-873; *In re Vieland*, 41 B.R. 134, 140-141 (Bankr.N.D.Ohio 1984); *In re Tucker*, 34 B.R. 257, 262-263 (Bankr.W.D.Okla.1983).
> Its proposal for cure-by-sale as vague and terse as it is, the Newtons' plan raises all of the uncertainty proscribed by these decisions. Their abbreviated presentation for the confirmation hearing did not prove up the likelihood of a prompt sale and cure.

*In re Newton*, 161 B.R. 207, 217-18 (Bankr. D. Minn. 1993).

Plans proposed by the debtors where there is a long delay (three to five years) between the date of confirmation and the proposed sale/refinancing of a debtor's residence impose unreasonable delay on creditors. The longest delay in the proposed liquidation of a debtor's property contemplated in any of the reported decisions revealed by the Courts' research was six months; and, even this relatively short delay was disapproved due to feasibility concerns. See In re Gavia, 24 B.R. 573 (B.A.P. 9th Cir. 1982). Indeed, in virtually all of the reported decisions, the plans under consideration called for immediate marketing and sale (or refinancing) of the asset(s) to be liquidated. See, e.g., *In re Anderson*, 28 B.R. 628 (S.D. Ohio 1982) (affirming confirmation of Chapter 13 plan proposing immediate sale of debtor's farm despite "far from ideal" market conditions where the Bankruptcy Court required monitoring of the continued feasibility of the plan through periodic progress reports to the Chapter 13 trustee); *In re Hogue*, 78 B.R. 867, 874 n. 9 (Bankr. S.D. Ohio 1987).

This decision does not imply that all partial liquidation Chapter 13 plans are unfeasible. Instead, the Court simply holds that plans of the type before the Court in the case at bar (i.e., plans whose success depends upon the occurrence of a speculative, contingent event in the distant future) cannot meet §1325(a)(6)'s feasibility requirement. The Court can conceive of instances where a partial liquidation Chapter 13 plan would be found to meet the feasibility confirmation criterion of §1325(a)(6). Such a case would necessarily involve the presentation of competent evidence establishing that the proposed liquidation was not unduly speculative - i.e., that the terms of the liquidation (such as price to be received by the seller) are fairly certain–and that the liquidation is scheduled to occur either immediately, or within a reasonably short time period. *In re Hogue*, at n.10 (Bankr. S.D. Ohio 1987). The decisions in *Newton* and *Anderson* should condemn the debtor's plan because the plan does not provide for an immediate sale or refinancing.

At the hearing on the bank's objection debtor submitted a Loan Status Disclosure form. It does not bind a lender to refinance at a later date. It indicates the debtor's <u>current</u> prequalification or application status and states that it does not constitute a loan commitment or financing guarantee.

For the reasons stated herein, confirmation of Debtor's proposed September 19, 2005, plan is **Denied** .

Dated: November 16, 2005                    ENTERED:

                                            _____
                                            Jacqueline P. Cox
                                            United States Bankruptcy Judge